1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LOCALS 302 AND 612 OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS
CONSTRUCTION INDUSTRY HEALTH
AND SECURITY FUND, *et al.*,

               Plaintiffs,

    v.

BARRY CIVIL CONSTRUCTION INC.,

              Defendant.

CASE NO. 2:19-cv-00800-BAT

**ORDER GRANTING DEFAULT
JUDGMENT**

      This is an action to recover delinquent contributions and amounts owing by Defendant

Barry Civil Construction Inc., pursuant to Section 301 of the Labor Management Relations Act,

29 U.S.C. § 185, and Sections 502 and 515 of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1132 and 1145. Plaintiffs Locals 302 and 612 of the International

Union of Operating Engineers Construction Industry Health and Security Fund, Locals 302 and

612 of the International Union of Operating Engineers-Employers Construction Industry

Retirement Fund, Western Washington Operating Engineers-Employers Training Trust Fund,

and Local 302 International Union of Operating Engineers, (collectively "Trust Funds") move

for default judgment against Defendant Barry Civil Construction, Inc. ("Barry Construction").

Dkt. 33.

1    For the reasons discussed below, the Court grants the motion.

2                              BACKGROUND

3    A.    Factual Background

4         Trust Funds are unincorporated associations operating as Trust Funds pursuant to section

5    302 of the Labor Management Relations Act of 1947, as amended, under the respective names of

6    Locals 302 and 612 of the International Union of Operating Engineers-Construction Industry

7    Health & Security Fund, Locals 302 and 612 of the International Union of Operating Engineers-

8    Employers Construction Industry Retirement Fund, and Western Washington Operating

9    Engineers-Employers Training Fund, to provide medical, retirement, and training benefits to

10   eligible participants. Dkt. 1, p. 2 (Complaint).

11        Barry Construction is bound to a collective bargaining agreement with Local 302 and

12   Local 612 of the International Union of Operating Engineers ("Locals"), pursuant to which Barry

13   Construction is required to promptly and fully report for and pay monthly contributions to the

14   Trust Funds at varying, specified rates for each hour of compensation Barry Construction pays to

15   its employees who are members of the bargaining unit represented by the Locals (such

16   bargaining unit members are any of Barry Construction's part time or full time employees who

17   perform any work task covered by Barry Construction's labor contracts with the Locals, whether

18   or not those employees actually join the Locals). Dkt. 1, pp. 2-3.

19        Barry Construction accepted the Trust Funds' respective Agreements and Declarations of

20   Trust and agreed to pay to each Trust Fund liquidated damages equal to twelve percent (12%) of

21   all delinquent and delinquently paid contributions, or $25.00 per month, whichever sums are

22   greater, and twelve percent (12%) annual interest accruing on each monthly contribution

23   delinquency from the first day thereof until fully paid, as well as all attorneys' fees and costs,

ORDER GRANTING DEFAULT JUDGMENT
- 2

1   including audit expenses if applicable, which Trust Funds incur in collection of Barry

2   Construction's unpaid obligations. Dkt. 1, p. 3.

3          Barry Construction submitted remittance reports for the months of December 2018,

4   January 2019 and February 2019, but failed to pay contributions for those months. The total

5   contributions owed for said months are $29,959.68. Based on Barry Construction's unpaid

6   contributions for the months of December 2018, January 2019 and February 2019, Barry

7   Construction is further obligated for liquidated damages in the amount of $3,617.39, as well as

8   interest accruing and attorneys' fees and costs.  Dkt. 1, pp. 3-4.

9          Since March 1, 2019, Barry Construction failed to promptly report for and/or pay to Trust

10   Funds all amounts due them for work performed by Barry Construction's employees, and only

11   Barry Construction's records contain the detailed information necessary to an exact

12   determination of the extent of its unpaid obligations. Dkt. 1, p. 4.

13   B.   Procedural Background

14          On May 28, 2019, the Trust Funds filed their Complaint. Dkt. 1. Barry Construction was

15   served with a summons and the Complaint on June 6, 2019. Dkt. 3. On July 8, 2019, Attorney

16   Judd Lees of the law firm Sebris Busto James, entered his appearance on July 8, 2019 and filed

17   an Answer on behalf of Barry Construction. Dkt. 6, 7. On July 15, 2019, Mr. Lees passed away.

18   On July 19, 2019, Attorneys M. Edward Taylor and Jason Rossiter of the same law firm entered

19   their appearances on behalf of Barry Construction. Dkt. 9. At the request of the parties (Dkt. 8),

20   the Court's initial scheduling deadlines (Dkt. 4) were continued. Dkt. 10. On August 26, 2019,

21   Attorney Darren Anthony Feider of the law firm Sebris Busto James entered his appearance on

22   behalf of Barry Construction. Dkt. 11.

23

1        On August 30, 2019, the parties submitted a Joint Status Report and the case was

2  reassigned to this magistrate judge for all further proceedings. Dkt. 12, 13. On September 5,

3  2019, the Court set the matter for a bench trial on January 11, 2021 and set other pretrial

4  deadlines. Dkt. 14.

5        On January 13, 2020, Attorneys Feider, Taylor, Rossiter, and Lees moved to withdraw

6  their representation of Barry Construction because Barry Construction had failed to satisfy the

7  terms of the parties' engagement. Dkt. 21. On February 10, 2020, the Court granted the motion.

8  Dkt. 22.

9        On July 28, 2020, Attorney Noelle E. Dwarzski of Barlow Coughran Morales &

10  Josephson was substituted as counsel for Trust Funds. Dkt. 23, 24. On August 24, 2020, the

11  Court granted Trust Funds' request (Dkt. 25) to continue the trial date and scheduling order to

12  allow new counsel time to determine how to move towards resolution. Dkt. 28.

13        By letters dated August 12 and September 23, 2020, Trust Funds inquired whether Barry

14  Construction had hired new counsel. Dkt. 31, ¶ 3, Ex. A. To date, Barry Construction has

15  provided no attorney information and no notice of representation has been received (*id.*, ¶ 4) or

16  filed with the Court.

17        On November 13, 2020, Trust Funds sent copies of default proceedings to Barry

18  Construction's last known address. Dkt. 31, Declaration of Noelle Dwarzski, ¶ 5, Ex. B. Barry

19  Construction did not file a responsive pleading. On November 30, 2020, Trust Funds filed a

20  motion for default. Dkt. 30. Trust Funds allege that Barry Construction is neither an infant nor

21  incompetent. Further, Barry Construction is a corporation and therefore, not in military service

22  and not a dependent of a service member in the Armed Services of the United States. Dkt. 31,

23  Dwarzski Decl., ¶ 8.

ORDER GRANTING DEFAULT JUDGMENT
- 4

1    On December 14, 2020, an Order of Default was entered by the Court Clerk. Dkt. 32.

2    On February 9, 2021, Trust Funds filed a motion for default and supporting declarations.

3    Dkt. 34, Motion for Default; Dkt. 35 Declaration of Randi Lowe; Dkt. 36, Declaration of Noelle

4    Dwarzski.

5    Barry Construction has not filed any opposition to the motion or otherwise sought any

6    relief from the Court.

7    <u>DISCUSSION</u>

8    A.    <u>Standards Governing Default</u>

9    Upon entry of default (*see* Dkt. 32), the allegations in the Complaint are determined to be

10   true, but damages are not. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977).

11   Therefore, with the entry of default, it is determined that: (1) the Court has jurisdiction

12   over this matter pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. §

13   185, and Sections 502 of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132 and

14   1145; (2) at all material times Barry Construction has been signatory to a collective bargaining

15   agreement ("CBA") with the Local 302 and Local 612 of the International Union of Operating

16   Engineers; (3) Barry Construction accepted the Trust Funds respective Agreements and

17   Declarations of Trust and agreed to pay to each Trust Fund liquidated damages equal to twelve

18   percent (12%) of all delinquent and delinquently paid contributions, or $25.00 per month,

19   whichever sums are greater, and twelve percent (12%) annual interest accruing upon each

20   monthly contribution delinquency from the first day thereof until fully paid, as well as attorney

21   fees and costs, including audit expenses if applicable, which Trust Funds incur in collection of

22   Barry Construction's unpaid obligations; and (4) Barry Construction has failed to timely make

23   the required contributions to the Trust Funds for January through March 2019 and the April

ORDER GRANTING DEFAULT JUDGMENT
- 5

1   through September 2019 audit period. Dkt. 1, See Complaint; Dkt. 34, Declaration of Randi

2   Lowe, ¶ 25.

3          After entry of default, if the amount at issue is uncertain, the moving party must apply to

4   the Court for a default judgment. Fed.R.Civ.P. 55(b)(2). Courts may order default judgment after

5   the entry of default pursuant to Rule 55(b)(2), but entry of default judgment is left to the court's

6   sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In exercising its

7   discretion, the court considers seven factors (the "*Eitel* factors"): (1) the possibility of prejudice

8   to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the

9   sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the

10  possibility of a dispute concerning material facts; (6) whether the default was due to excusable

11  neglect; and (7) the strong policy favoring decisions on the merits when reasonably possible.

12  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986).

13  B.    The Eitel Factors

14         Default judgment is warranted in this case because the *Eitel* factors weigh in favor of

15  such judgment.

16         1.    First *Eitel* Factor – Possibility of Prejudice to Plaintiff

17         The first *Eitel* factor is the possibility of prejudice to Trust Funds. On a motion for

18  default judgment, "prejudice" exists where the plaintiff has no "recourse for recovery" other than

19  default judgment. *Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 499

20  (C.D.Cal.2003).

21         Trust Funds will be prejudiced if default judgment is not entered here as it is very

22  unlikely that their claims can be resolved on the merits. The last substantive activity in this case

23  occurred in August 2019, when the parties submitted their joint status report and the case was set

ORDER GRANTING DEFAULT JUDGMENT
- 6

1   for trial. Since January 13, 2020, when the attorneys for Barry Construction withdrew, and

2   November 30, 2020, when the notice of default was filed, nothing has occurred in this case.

3   Barry Construction did not respond to letters sent to them in August and September of last year,

4   and to date, no attorney has entered an appearance on its behalf.

5         It is well established that a corporation may appear in federal court only through licensed

6   counsel. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02

7   (1993) (citation and internal quotations omitted); *United States v. High Country Broad Co., Inc.*,

8   3 F.3d 1244, 1245 (9th Cir.1993). Although Barry Construction was given ample time to obtain

9   new counsel, it has failed to do so. Even after Trust Funds served Barry Construction with the

10   default notice (and there is no evidence indicating that it was not received), Barry Construction

11   has failed to participate, respond, or seek relief from the Court.

12         The foregoing demonstrates that it is unlikely that Trust Funds' claims can be resolved on

13   the merits. Thus, the first factor weighs in favor of the entry of default judgment.

14        2.       <u>Second and Third *Eitel* Factors – Substantive Merits and Sufficiency of</u>
<u>Complaint</u>

15

16         The second and third *Eitel* factors—the substantive merits of the claim and the

17   sufficiency of the complaint—are often analyzed together. *PepsiCo., Inc. v. Cal. Sec. Cans*, 238

18   F.Supp.2d 1172, 1175 (C.D.Cal.2002). A default concedes the truth of the allegations as to the

19   defaulting defendant's liability. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

20   1987) (quoting *Geddes*, 559 F.2d at 560).

21         Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2)(D), provides:

22         In any action under this title by a fiduciary for or on behalf of a plan to enforce section

23   515 in which a judgment in favor of the plan is awarded, the court shall award the plan-

         (A)      the unpaid contributions,

ORDER GRANTING DEFAULT JUDGMENT
- 7

1      (B)     interest on the unpaid contributions,

2      (C)     an amount equal to the greater of –
           (I) interest on the unpaid contributions, or

3           (II) liquidated damages provided for under the plan in an amount not in excess of
           20%. . .

(D)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

4      (E)     such other legal or equitable relief as the court deems appropriate.

The CBA obligates Barry Construction to promptly and fully report for and pay monthly

contributions to the Trust Funds at varying, specified rates for each hour of compensation Barry

Construction pays to its employees who are members of the bargaining unit represented by the

Locals. Dkt. 1, Count I, Art. V. Barry Construction accepted Trust Funds respective agreements

and agreed to pay each Trust Fund liquidated damages equal to twelve percent of all delinquent

and delinquently paid contributions, or $25.00 per month, whichever sums are greater, and

twelve percent annual interest accruing on each month contribution delinquency from the first

day thereof until fully paid, and attorneys' fees and costs, including audit expenses. Dkt. 1,

Count I, Art. VI.

Barry Construction submitted remittance reports for the months of December 2018,

January 2019 and February 2019, but failed to pay timely contributions for those months. Dkt. 1,

Count I, Art. VII. Since March 1, 2019, Barry Construction failed to promptly report for and/or

pay to Trust Funds all amounts due for work performed by Barry Construction's employees, and

only Barry Construction's records contain the detailed information necessary to make an exact

determination of the extent of Barry Construction's unpaid obligations. Dkt. 1, Count I, Art.

VIII.

Barry Construction also entered into an agreement with the Locals to deduct from the

periodic paychecks of its employees who are represented by the Locals, specified amounts for

each hour of compensation paid by Barry Construction to those employees and to remit the total

thus deducted each month to the Locals no later than the 15th of the month. Dkt. 1, Count Two, Art. IV.

Barry Construction submitted remittance reports for the months of December 2018, January 2019 and February 2019, but failed to pay Locals the amounts due for those months in a timely manner. Dkt. 1, Count II, Art. V.

Since March 1, 2019, Barry Construction failed to promptly report for and/or pay to the Local the total sum deducted from the periodic paychecks of Barry Construction's employees who are represented by the Locals. Dkt. 1, Count II, Art. VI. Barry Construction owes the Trust Funds $15,513.06 in contributions for January through March 2019 and $13,951.10 in unpaid contributions for April through September 2019. Dkt. 35, Lowe Decl., ¶¶ 16, 17, Ex. D, E, F. In addition to these unpaid contributions, Trust Funds are entitled to the mandatory award of liquidated damages, interest and attorney fees. *See* 29 U.S.C. § 1132(g)(2); *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 258 (9th Cir. 1996).[1] Each of the governing Trust Agreements provides for the assessment of liquidated damages of twelve percent (12%) of the outstanding amount of contributions owed to the Trust Funds, interest of twelve percent (12%) per annum on the outstanding contributions owed to the Trust Funds, and reasonable attorney fees and court costs. *See* Dkt. 33, pp. 5-6, ¶¶ 1-4; Dkt. 34, Lowe Decl., Ex. E, F, G, H.

The well-pled factual allegations of Trust Funds' Complaint establish Barry Construction's liability for unpaid contributions and mandatory fees pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. §§ 1132

---

[1] To be entitled to a mandatory award under § 1132(g)(2), the following three requirements must be satisfied: (1) the employer must be delinquent at the time the action is filed; (2) the district court must enter a judgment against the employer; and (3) the plan must provide for such an award. *Northwest Adm'rs, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257 (9th Cir. 1996) (internal citations omitted). All requirements are satisfied here.

ORDER GRANTING DEFAULT JUDGMENT
- 9

1    and 1145. Thus, the second and third *Eitel* factors weigh in favor of granting default judgment in

2    this case.

3              3.        Fourth *Eitel* Factor - Sum of Money at Stake

4              The fourth *Eitel* factor is the sum of money at stake in the case. In weighing this factor,

5    courts consider the amount of money requested in relation to the seriousness of the defendant's

6    conduct, whether large sums of money are involved, and whether "the recovery sought is

7    proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter.,*

8    *Inc.*, 725 F.Supp.2d 916, 921 (N.D.Cal.2010); *see also Eitel*, 782 F.2d at 1472. If the amount of

9    money is large or disproportionate, this factor weighs against default judgment. *See Getty Images*

10   *(US), Inc. v. Virtual Clinics*, No. C13–0626JLR, 2014 WL 358412, at *4 (W.D.Wash. Jan. 31,

11   2014).

12             This case involves Barry Construction's failure to pay contractual contributions to Trust

13   Funds, which in turn provide employee benefits, including medical and dental benefits, pension

14   benefits, and apprenticeship and training benefits to eligible employees covered by the CBA and

15   their dependents. The amount of recovery sought here is not large or disproportionate as it is

16   directly tied to contributions for the hours worked by Barry Construction's employees in addition

17   to contractually agreed upon liquidated damages, attorney fees, court costs, and expenses. Trust

18   Funds seeks recovery from Barry Construction of $29,464.16 in contributions, $6,256.34 in

19   interest, $4,988.93 in liquidated damages, $300 in attorney fees, $1,567.50 in audit fees, $479.50 in

20   costs, and litigation attorney fees in the amount of $3,190.00, for a total judgment of $46,246.43.

21             The sum of money at stake is reasonable in relation to the seriousness of Barry

22   Construction's conduct. Therefore, this factor weighs in favor of granting default judgment.

23

ORDER GRANTING DEFAULT JUDGMENT
- 10

1         4.     <u>Fifth *Eitel* Factor – Possibility of Dispute Concerning Material Facts</u>

2         The fifth factor is the possibility of a dispute concerning material facts. When default has

3    been entered, courts find that there is no longer the possibility of a dispute concerning material

4    facts because the court must take the plaintiff's factual allegations as true. *See*, *e.g*., *Microsoft*

5    *Corp. v. Lopez*, 2009 WL 959219, *3 (W.D. Wash.2009). Where a plaintiff "has supported its

6    claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the

7    allegations in the complaint, no factual disputes exist that preclude the entry of default

8    judgment." *Landstar*, 725 F.Supp.2d at 922; *accord Kloepping v. Fireman's Fund*, No. C 94–

9    2684 TEH, 1996 WL 75314, at *3 (N.D.Cal. Feb. 13, 1996) (a "plaintiff's presumptively

10   accurate factual allegations leave little room for dispute," especially where the "defendant had

11   the opportunity to dispute the facts alleged, but has avoided and utterly failed to respond to

12   plaintiff's allegations").

13        Here, Trust Funds' allegations are supported by evidence and Barry Construction has not

14   challenged those allegations. Thus, this factor supports the entry of default judgment.

15        5.     <u>Sixth *Eitel* Factor – Whether Entry of Default is Due to Excusable Neglect</u>

16        The sixth factor addresses whether the entry of default is due to excusable neglect. Barry

17   Construction received notice and was given ample time to obtain counsel to represent its

18   interests, to respond to Trust Funds' letters and notice of default, or to seek additional time or

19   other relief from the Court. Given Barry Construction's failure to actively participate in this

20   litigation for the past year, the Court finds no evidence of its excusable neglect.

21        Accordingly, this factor weighs in favor of the entry of default judgment.

22

23

ORDER GRANTING DEFAULT JUDGMENT
- 11

6.      Seventh *Eitel* Factor – Whether Default Judgment is Appropriate in Light of the Policy Favoring Decisions on the Merits

The seventh factor requires the court to weigh whether default judgment is appropriate in light of the policy favoring decisions on the merits. This factor reflects the general principle that cases should be decided on their merits when it is reasonably possible to do so. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir.1985). Although this factor "almost always disfavors the entry of default judgment," it is not dispositive. *Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09–1585JLR, 2011 WL 1584424, at *6 (W.D.Wash. Apr. 27, 2011); *see also Microsoft*, 2009 WL 959219, at *3 ("[T]he mere existence of Fed.R.Civ.P. 55(b) indicates that this *Eitel* factor is not alone dispositive").

Barry Construction's failure to obtain counsel, oppose the instant motion, or otherwise participate in this action, prevents adjudication on the merits and therefore, this factor favors entry of a default judgment.

7.      On Balance, the *Eitel* Factors Support Default Judgment

On balance, the *Eitel* factors overwhelmingly support default judgment in this case. Trust Funds have no other recourse, their substantive claims have merit, and their complaint is sufficient. Further, there is no possibility of a dispute about material facts, and the entry of default against Barry Construction was not due to excusable neglect. Given the factual circumstances here and the procedural history of this litigation, these factors outweigh the policy favoring decisions on the merits.

Accordingly, the Court **GRANTS** Plaintiffs' motion for default judgment.

C.      Damages on Default Judgment

Because the Court concludes that entry of default judgment is appropriate, it must now calculate damages. At the default judgment stage, the court does not presume the truth of any

ORDER GRANTING DEFAULT JUDGMENT - 12

1    factual allegations related to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

2    915, 917–18 (9th Cir.1987). Thus, the plaintiff is required to prove all damages sought in the

3    complaint, and the court must ensure that the amount of damages is reasonable and demonstrated

4    by the evidence. Fed.R.Civ.P. 55(b); Fed.R.Civ.P. 8(b)(6); *TeleVideo*, 826 F.2d at 917–18. Also,

5    "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the

6    pleadings." Fed.R.Civ.P. 54(c).

7            In support of their monetary demand, Trust Funds submitted the declaration of their Data

8    Control Supervisor, Randi Lowe. Dkt. 34, Lowe Decl. Attached to Mr. Lowe's declaration are

9    true and correct copies of (1) the CBAs between the Associated General Contractors of

10   Washington ("AGC") and Local 302 for 2012 through 2021 (Ex. A); (2) CBAs between the

11   AGC and Local 612 for 2012 through 2021 (Ex. B); (3)  Barry Construction's Compliance

12   Agreement executed on January 12, 2010 binding Barry Construction to the CBA (Ex. C); (4)

13   Barry Construction's remittance reports for January through March 2019 (Ex. D); (5) Trust Funds'

14   Independent Accountants' Report on Applying Agreed-Upon Procedures dated August 31, 2020,

15   covering April through September 2019 (Ex. E); (6) the Revised Trust Agreement of the Locals 302

16   & 612 of the International Union of Operating Engineers Construction Industry Heath and Security

17   Fund (Ex. F); (7) the Revised Trust Agreement of the Locals 302 & 612 of the International Union of

18   Operating Engineers-Employers Construction Industry Retirement Fund (Ex. G); (8) Revised Trust

19   Agreement of the Western Washington Operating Engineers-Employers Training Trust Fund (Ex.

20   H); (9)  Locals 302 & 612 of the International Union of Operating Engineers Construction Industry

21   Heath and Security Trust and Locals 302 & 612 of the International Union of Operating Engineers-

22   Employers Construction Industry Retirement Trust Policy and Procedures for Collection of

23   Delinquent Employer Contributions (Ex. I); and (10) summary of the amounts due and owing

     prepared by Collections Counsel (Ex. J).

ORDER GRANTING DEFAULT JUDGMENT
- 13

The Court concludes that the amount of damages requested is reasonable and supported by the record. Accordingly, it is **ORDERED** that Trust Funds have a judgment for payment of employee benefit contributions, interest, liquidated damages, and attorney fees and costs for the delinquent months of January through March 2019 and the audit period of April through September 2019 and to recover from defendant, Barry Civil Construction Inc., for a total judgment of $46,246.43 (consisting of $29,464.16 in contributions, $6,256.34 in interest, $4,988.93 in liquidated damages, $300 in attorney fees, $1,567.50 in audit fees, $479.50 in costs, and litigation attorney fees in the amount of $3,190.00).

It is **FURTHER ORDERED** that, in accordance with the Trust Agreements, post-judgment interest shall accrue at twelve percent (12%) per annum from date of entry of default judgment, until paid.

DATED this 2nd day of March, 2021.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

ORDER GRANTING DEFAULT JUDGMENT
- 14